IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMIMI GLOBAL COMPANY LIMITED, | § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-0585 |
| KELLOGG BROWN & ROOT LLC, *et al.*, | § § § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

Tamimi Global Company Limited ("Tamimi") filed a Petition to Confirm Foreign Arbitration Award ("Petition") [Doc. # 1] seeking confirmation of an arbitration award in its favor against Kellogg Brown & Root, LLC, Kellogg Brown & Root International, Inc., and Kellogg Brown & Root Services, Inc. (collectively, "KBR"). KBR filed a Response [Doc. # 9] opposing confirmation of the arbitration award against it, and Tamimi filed a Reply [Doc. # 13].

KBR also filed a Motion to Stay Proceedings ("Motion to Stay") [Doc. # 11], seeking a stay of this proceeding until final completion of a related proceeding between KBR and the United States of America pending in the United States Court of Claims. Tamimi, not a party in the Court of Claims proceeding, filed a Response [Doc. # 13] in opposition to the Motion to Stay, and KBR filed a Reply [Doc. # 23].

KBR advised the Court in writing [Doc. # 25] that the United States filed a Counterclaim in the Court of Claims proceeding, Tamimi filed a Letter [Doc. # 26] in response, KBR filed a copy of the Government's Counterclaim filed in the Court of Claims [Doc. # 27], and Tamimi filed a Supplemental Response [Doc. # 28].

Having reviewed the full record in this case, including pleadings filed in the Court of Claims proceeding, and having considered relevant legal authorities, the Court **denies** the Motion to Stay and **grants** the Petition.

I.    **BACKGROUND**

In 2001, the United States awarded KBR a contract in connection with the Government's Logistics Civil Augmentation Program to provide dining facility services to the Untied States during military operations. Tamimi is not a party to this contract.

In 2003, KBR was assigned to provide dining facilities and food services for military personnel in Iraq. In June 2003, KBR awarded Master Agreement 3 to Tamimi setting forth the basic terms and conditions governing the contractual relationship between KBR and Tamimi. Master Agreement 3 did not require Tamimi to perform until KBR issued a work release. In August 2003, KBR issued Work Release 3 under Master Agreement 3 for Tamimi to provide food services to American troops at Camp Anaconda in Iraq. The Master Agreement contains an

arbitration provision requiring any dispute arising out of the agreement to be resolved by arbitration in London, England, under the rules of the London Court of International Arbitration.

As a result of a dispute between the United States and KBR, the United States withheld funds from KBR. KBR then withheld funds it owed to Tamimi. KBR admitted that it owed Tamimi $34,675,583.00, but argued that it was not required to pay Tamimi unless and until the United States paid KBR. The parties submitted the dispute to arbitration in London as required by their agreement. The arbitration panel in London conducted a hearing in May 2010 and, in December 2010, issued an award in favor of Tamimi. *See* Final Award ("Arbitration Award"), Exh. B to Petition. The arbitration panel awarded Tamimi, *inter alia*, $34,675,583.00, plus interest at the rate of 4% per annum from February 1, 2008, to the date of payment, and a fixed amount, plus 4% per annum interest, for costs and legal fees. *See id.* at 24-25. Tamimi then filed this Petition seeking confirmation of the Arbitration Award.

KBR opposed confirmation as against public policy based on allegations of fraud that the United States indicated it intended to file in the Court of Claims proceeding. The United States subsequently filed those allegations as a counterclaim. *See* Amended Answer and Counterclaims ("Counterclaim"), Exh. to KBR's Supplemental Submission [Doc. # 27]. The United States alleges that Mr. Terry Hall,

KBR's head of food services for Kuwait and Iraq, and Mr. Luther Holmes, his deputy, received kickbacks from Tamimi to influence them to recommend awarding the dining facilities subcontracts to Tamimi. The United States alleges that Hall began taking money from Tamimi, understanding that the money was being paid so that Tamimi would continue to receive contracts from KBR. Hall and Holmes were among the decision-makers regarding the entities that would be awarded the dining facilities subcontracts.

The United States also alleges that in February 2004, Daniel Petsche, a recently-fired KBR employee, reported to David Hadcock, a current KBR employee, that there were irregularities surrounding the Master Agreement 3 Work Release 3 subcontract with Tamimi involving Camp Anaconda, Iraq. Petsche had originally believed the subcontract should be awarded to a different subcontractor, but "changed his mind based upon the advocacy for Tamimi that he received from Mr. Hall." *See* Counterclaim, ¶ 120. In February 2004, Petsche informed Hadcock that the Camp Anaconda subcontract was "predestined and out of control from the start." *Id.*, ¶ 124. Petsche also informed Hadcock that there was "a whole lot more to this story" and suggested that there were similar irregularities in other subcontracts between KBR and Tamimi. *Id.* Hadcock forwarded the information to William Jonas, head of procurement for KBR, and to Charlie Carr, head of KBR's team responsible for dining

facilities subcontracts. The United States alleges that KBR took no action to investigate Petsche's allegations. *Id.*, ¶ 125.

The Petition and Motion to Stay have been fully briefed and are ripe for decision.

## II.     **STANDARD FOR CONFIRMATION OF ARBITRATION AWARD**

Under the Convention on the Recognition and Enforcement of Foreign Tribunal Awards (the "New York Convention"), 9 U.S.C. § 201, *et seq.*, a district court may refuse to confirm an arbitration award only if it finds one of seven grounds specified by the New York Convention. *See* 9 U.S.C. § 207; *Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004). One of those seven grounds is that the "recognition or enforcement of the award would be contrary to the public policy" of the enforcing country. *Karaha Bodas*, 364 F.3d at 287 n.16. The party opposing confirmation, KBR in this case, bears the burden of proving the application of the asserted ground. *Id.* at 288. Defenses to confirmation are construed narrowly, in order "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . . ." *Id.* (citations omitted).

"The public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and

justice." *Id.* at 306. Stated differently, an arbitration award is against public policy only where it is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (citing *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986)). "The standard is high, and infrequently met." *Id.*

### III.  ANALYSIS

#### A.  Public Policy Argument

KBR argues that it would be against public policy to confirm an arbitration award involving a contract procured through fraud.[1] KBR's argument is based entirely on the allegations made by the United States in the Court of Claims proceeding. For this reason, KBR seeks a stay of this proceeding until the Court of Claims proceeding is concluded. Clearly, if there is an ultimate finding that no fraud occurred, there would be no basis for KBR's public policy argument and Tamimi would be entitled to confirmation of the Arbitration Award.

The Court concludes, however, that a stay is not warranted and confirmation is appropriate because the allegations made by the United States in the Court of Claims, ***even if proven***, would not lead this Court to refuse confirmation on public policy grounds. In this case, the allegations by the United States are that KBR was a

---

[1] It is important to note that the alleged fraud was in connection with awarding the KBR subcontract to Tamimi, not in connection with the arbitration proceeding.

participant in the alleged fraud. To the extent Tamimi was paying kickbacks to obtain dining services subcontracts, KBR – through its managerial employees – was accepting those kickbacks. The "irregularities" were reported to KBR higher level personnel, but KBR elected not to investigate. If the United States proves its allegations, it will prove that KBR does not have clean hands, having engaged in fraud to the same extent as Tamimi. Enforcement of an arbitration award or other judgment in favor of one party alleged to have committed fraud against the other party allegedly engaged in the same fraudulent misconduct does not violate the most basic notions of morality and justice.[2]

Additionally, KBR was aware of the alleged problems with the Tamimi subcontract well before the arbitration proceeding resulted in the Arbitration Award. KBR's managerial employees were allegedly involved in the fraud and the irregularities were reported to more senior supervisory personnel before the arbitration proceeding. The only impediment to KBR raising the alleged fraud in the arbitration proceeding was KBR's understandable desire not to admit its own involvement. Public policy does not favor allowing a party that engaged in fraud from concealing that fraud and then – when the fraud is later discovered by a third party – attempting to use the fraud as a defense to a valid arbitration award in favor of its alleged co-

---

[2]  KBU does not argue that Tamimi failed to render the services for which Tamimi seeks compensation from KBR.

conspirator. KBR has not satisfied its burden to show that public policy considerations should cause this Court to refuse to enforce the otherwise valid Arbitration Award.

### B. Interest Included in Arbitration Award

The arbitration panel applied the rules of the London Court of International Arbitration ("LCIA") and awarded interest, costs, and legal fees to Tamimi. KBR argues that this Court should not confirm the interest portion of the Arbitration Award because Texas public policy does not provide for an award of interest in arbitration.

It is well-established that a "district court should enforce an arbitration award as written – to do anything more or less would usurp the tribunal's power to finally resolve disputes and undermine the pro-enforcement policies of the New York Convention." *Wartsila Finland Oy v. Duke Capital LLC*, 518 F.3d 287, 292 (5th Cir. 2008). In this case, the arbitration panel, based on LCIA Rule 26.6, awarded pre-judgment and post-judgment interest.[3] This Court is required to enforce the Arbitration Award as written, which includes the award of interest.

---

[3] LCIA Rule 26.6 provides as follows:

> An award may be expressed in any currency. The Arbitral Tribunal may order that simple or compound interest shall be paid by any party on any sum awarded at such rates as the Arbitral Tribunal determines to be appropriate, without being bound by legal rates of interest imposed by any state court, in respect of any period which the Arbitral Tribunal determines to be appropriate ending not later than the date upon which the award is complied with.

Additionally, the single published case relied upon by KBR does not support its argument. In that case, the underlying arbitration panel declined to award pre-judgment interest and the Court of Appeals held that the trial court did not err by refusing to add interest that was not included in the arbitration award. *See Fogal v. Stature Construction, Inc.*, 294 S.W.3d 708, 722 (Tex. App. – Houston [1st Dist.] 2009).[4] In the case before this Court, the arbitration panel awarded interest, indeed, interest that was provided for by the governing arbitral rules, and it would be inappropriate to modify the Arbitration Award to eliminate the interest portion of the Award.

## IV.   CONCLUSION AND ORDER

None of the seven grounds specified in the New York Convention, more particularly, the public policy defense, precludes confirmation of the Arbitration Award in this case. Public policy favors confirmation of foreign arbitration awards. The allegations of fraud by both KBR and Tamimi, even if proven by the United States in the Court of Claims proceeding, do not support denial of confirmation of the Arbitration Award on public policy grounds. Accordingly, it is hereby

---

[4]   The majority of courts, state and federal, in Texas hold that under Texas law, pre-judgment interest should be included in an arbitration award "in all but exceptional circumstances." *See McVay v. Halliburton Energy Svcs., Inc.*, 688 F. Supp. 2d 556, 564 (N.D. Tex. 2010), and cases cited therein. Similarly, because confirmation of an arbitration award is the "equivalent, in every respect, to any other judgment entered by the [federal] court, it is also subject to post-judgment statutory interest under § 1961." *Id.* at 565 (citing 28 U.S.C. § 1961(a)).

**ORDERED** that the Motion to Stay [Doc. # 11] is **DENIED** and the Petition to Confirm Foreign Arbitration Award [Doc. # 1] is **GRANTED**. The Court will issue a separate final order of confirmation.

SIGNED at Houston, Texas, this **24th** day of **March, 2011**.

_____
Nancy F. Atlas
United States District Judge