IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMIMI GLOBAL COMPANY LIMITED, | § § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0585 |
| | § | |
| KELLOGG BROWN & ROOT LLC, | § | |
| *et al.*, | § | |
| Respondents. | § | |

## <u>MEMORANDUM AND ORDER</u>

Tamimi Global Company Limited ("Tamimi") filed a Petition to Confirm

Foreign Arbitration Award ("Petition") [Doc. # 1] seeking confirmation of an

arbitration award in its favor against Kellogg Brown & Root, LLC, Kellogg Brown

& Root International, Inc., and Kellogg Brown & Root Services, Inc. (collectively,

"KBR"). By Memorandum and Order [Doc. # 29] and Final Judgment [Doc. # 30]

entered March 25, 2011, the Court granted the Petition. The case is now before the

Court on KBR's Motion to Alter or Amend Findings and Judgment ("Motion to

Alter") [Doc. # 34], to which Tamimi filed a Response [Doc. # 38], and KBR filed a

Reply [Doc. # 39]. Having reviewed the full record in this case and having applied

governing legal authorities, the Court **denies** the Motion to Alter.

## I.    BACKGROUND

The factual background of this case was set forth fully in the Court's March 25, 2011 Memorandum and Order.  Briefly, the United States awarded KBR a contract to provide dining facility services to the United States during military operations.  In 2003, KBR was assigned to provide dining facilities and food services for military personnel in Iraq.  In June 2003, KBR awarded Master Agreement 3 to Tamimi setting forth the basic terms and conditions governing the contractual relationship between KBR and Tamimi.   In August 2003, KBR issued Work Release 3 under Master Agreement 3 for Tamimi to provide food services to American troops at Camp Anaconda in Iraq.  The Master Agreement contained an arbitration provision requiring any dispute arising out of the agreement to be resolved by arbitration in London, England, under the rules of the London Court of International Arbitration.

A dispute arose between the United States and KBR in connection with the United States withholding funds from KBR under an internal audit procedure.  As a result of the United States withholding funds from KBR, KBR withheld funds it owed to Tamimi.  KBR admitted that it owed Tamimi $34,675,583.00, but argued only that it was not required to pay Tamimi unless and until the United States paid KBR.

The parties submitted the dispute to arbitration in London in January 2009 as required by their agreement.  Following a hearing in May 2010, the arbitration panel

in London held in Tamimi's favor and awarded Tamimi, *inter alia*, $34,675,583.00, plus interest at the rate of 4% per annum from February 1, 2008, to the date of payment.  *See* December 17, 2010 Final Award ("Arbitration Award"), Exh. B to Petition, at 24-25.

Shortly thereafter, Tamimi filed a timely Petition seeking confirmation of the Arbitration Award.  KBR opposed confirmation as against public policy based on allegations of fraud that the United States filed in the Court of Claims proceeding.[1] *See* Amended Answer and Counterclaims ("Counterclaim"), Exh. to KBR's Supplemental Submission [Doc. # 27].  The United States alleged in the Court of Claims that in late 2002 or early 2003, Mr. Terry Hall, KBR's head of food services for Kuwait and Iraq, and Mr. Luther Holmes, his deputy, received kickbacks from Tamimi to influence them to recommend awarding the dining facilities subcontracts to Tamimi.  *See id.*, ¶ 115.  The United States alleged that Hall began taking money from Tamimi, understanding that the money was being paid so that Tamimi would continue to receive contracts from KBR.  *See id.*  Hall and Holmes were among the

---

[1]     At the time KBR filed its opposition to the Petition in this Court on February 3, 2011, the United States had not yet filed its counterclaim in the Court of Claims proceeding. The United States' counterclaims were filed on March 17, 2011, however, before the Court ruled on the Petition.  *See* Supplemental Submission [Doc. # 27].  The allegations in the United States' counterclaims were considered by the Court in ruling on KBR's public policy defense to confirmation of the Arbitration Award.

decision-makers regarding which entities would be awarded the dining facilities subcontracts.  *See id.*, ¶ 116.

The United States also alleged in its counterclaim in the Court of Claims proceeding that in February 2004, Daniel Petsche, a recently-fired KBR employee, reported to David Hadcock, a current KBR employee, that there were irregularities surrounding KBR's subcontract with Tamimi for food services at Camp Anaconda, Iraq.  The United States alleged that Petsche originally believed the subcontract should be awarded to a different subcontractor, but "changed his mind based upon the advocacy for Tamimi that he received from Mr. Hall."  *See id.*, ¶ 120.  In February 2004, Petsche informed Hadcock that the Camp Anaconda subcontract was "predestined and out of control from the start."  *Id.*, ¶ 124.  Petsche also informed Hadcock that there was "a whole lot more to this story" and suggested that there were similar irregularities in other subcontracts between KBR and Tamimi.  *Id.*  The United States alleged that Hadcock promptly forwarded the information to William Jonas, head of procurement for KBR, and to Charlie Carr, head of KBR's team responsible for dining facilities subcontracts, who received the information by March 2004.  *See id.*, ¶ 125.  The United States alleges that KBR took no action to investigate Petsche's allegations.  *See id.*

Noting that the only basis for KBR's public policy argument was the existence of fraud allegations asserted by the United States in the Court of Claims proceeding, and noting further that the United States alleged that KBR management employees were involved in the alleged fraud, the Court held that public policy in this situation did not favor refusing to confirm the otherwise valid Arbitration Award. KBR now seeks reconsideration of that ruling.

## II.  STANDARD FOR RECONSIDERATION

Pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, KBR seeks reconsideration of the Court's ruling confirming the arbitration Award.[2] A Rule 59(e) motion to alter or amend judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (internal quotations omitted). This type of motion "calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re TranstexasGas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion is not a "vehicle for rehashing evidence, legal theories,

---

[2]      Rule 52(a) requires a Court in a trial without a jury to "find the facts specially and state separately its conclusions of law thereon." FED. R. CIV. P. 52(a). Rule 52(b) permits a Court to amend those findings or make additional findings. FED. R. CIV. P. 52(b). In this case, the Court did not conduct a trial without a jury. The Court was not required to and did not make findings of fact. Consequently, there are no Findings of Fact to amend or supplement. KBR is not entitled to relief under Rule 52(b).

or arguments that could have been offered or raised before the entry of judgment" but instead has a "narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 478-79. "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.*

## III.   ANALYSIS

KBR argues that this Court improperly assumed that the United States could prove the allegations made in the Court of Claims proceeding, stressing its position that the allegations in the Court of Claims are not true. KBR argues also that the Court improperly invoked doctrines of vicarious liability and unclean hands, that the Court erroneously concluded that KBR knew of the allegations of fraud before the arbitration proceeding, and that the Court's ruling violates principles of comity among federal courts.

### A.    Standard for Confirmation of Arbitration Award

Under the Convention on the Recognition and Enforcement of Foreign Tribunal Awards (the "New York Convention"), 9 U.S.C. § 201, *et seq.*, a district court may refuse to confirm an arbitration award only if it finds one of seven grounds specified by the New York Convention. *See* 9 U.S.C. § 207; *Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004).

One of those seven grounds is that the "recognition or enforcement of the award would be contrary to the public policy" of the enforcing country.  *Karaha Bodas*, 364 F.3d at 287 n.16.  The party opposing confirmation, KBR in this case, bears the burden of proving the application of the asserted ground.  *Id.* at 288.  Defenses to confirmation are construed narrowly, in order "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . .."  *Id.* (citations omitted).

 "The public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice."  *Id.* at 306.  Stated differently, an arbitration award is against public policy only where it is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought."  *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (citing *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986)).  "The standard is high, and infrequently met."  *Id.*

### B. Alleged Assumption the United States Could Prove its Allegations

 KBR argued in opposition to the Petition that it would be against public policy to confirm an arbitration award involving a contract procured through fraud.  It bears repeating that there is no dispute that Tamimi rendered the services under its contract with KBR for which it sought the $34,675,853.00 awarded in the arbitration.

As noted above, to prevail on its public policy defense, KBR is obligated to satisfy the high burden to establish that confirmation of the Arbitration Award in this case is against public policy.  KBR supported its public policy argument with only the allegations made by the United States in the Court of Claims proceeding.  The Court did not and does not now assume that any of the United States' allegations could be proven.  Indeed, the Court repeatedly emphasized that the allegations *if proven* would not support KBR's public policy defense.  *See* Memorandum and Order [Doc. # 29], pp. 6, 7, 9.

Instead, the Court noted first that KBR could not satisfy its burden to establish a public policy defense if the United States' allegations are *not* true because those allegations were the sole basis for KBR's public policy argument.

The Court also held that the allegations made by the United States in the Court of Claims, *if proven*, would not cause this Court to refuse confirmation on public policy grounds.  The Court reached this conclusion because the United States alleged that KBR, through its managerial employees Hall and Holmes, was a knowing participant in the alleged fraud.  To further elaborate, according to the allegations in the United States' counterclaim in the Court of Claims, which allegations are the sole basis for KBR's public policy defense, to the extent Tamimi was *paying* kickbacks to obtain dining services subcontracts, it was KBR's managerial employees who were *accepting* those kickbacks.  The United States further alleges that "irregularities" in

the contract process were reported to KBR's higher level personnel, but KBR did not investigate.

If the United States fails to prove that Tamimi paid kickbacks to KBR managerial employees, there would be no basis for this Court to conclude that the contract had been procured through fraud and, therefore, no basis for the Court to deny confirmation of the Arbitration Award on the basis of a public policy defense. *If*, on the other hand, the United States proves its allegations, it will prove that KBR through its managerial employees engaged in fraud to the same extent as Tamimi.[3]

In essence, there are competing "public policies" present in this case. There is clearly, as argued by KBR, a strong public policy against paying bribes to obtain contracts, particularly government contracts. There is, however, an equally strong public policy against accepting bribes to award contracts, particularly government contracts. In the particular circumstances presented in this case, there is also the overriding strong federal policy favoring arbitration and enforcement of arbitration awards. *See Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214

---

[3]   This Court is unwilling to deny confirmation of an otherwise valid Arbitration Award based on supposition that the United States could prove Tamimi paid the bribes but not prove that KBR managerial employees accepted those bribes. Indeed, there is no indication that any party in the Court of Claims has asserted that Tamimi paid bribes but Hall and Holmes did not accept them. Additionally, public policy would not favor refusal to confirm the Arbitration Award even if high level executives at KBR did not know that mid-level managerial employees were involved in the alleged fraud.

(5th Cir. 2003).  Indeed, the policy favoring arbitration awards is so strong that a district court is required to confirm the award unless the party opposing confirmation establishes one of only seven specific grounds for denying confirmation.  *See Karaha Bodas*, 364 F.3d at 288.

The public policy defense asserted by KBR in this case requires a showing that confirmation of the arbitration award would violate the most basic notions of morality and justice.  Enforcement of an arbitration award does not satisfy this standard when the award is in favor of one party alleged to have engaged in fraud against the other party to the alleged fraud, particularly where there is no dispute that the award is for payment for services actually rendered.

### C.  <u>Vicarious Liability and Unclean Hands</u>

KBR argues that the Court assumed that vicarious liability applies and assumed that KBR was guilty of unclean hands.  As has been discussed thoroughly in the prior Memorandum and Order and herein, this Court has made no factual findings or assumptions regarding whether the United States can prove any of the allegations in the Court of Claims counterclaim.

KBR argues also that liability under the False Claims Act and/or the Anti-Kickback Act cannot be based on vicarious liability.  The proceeding before this Court is one to confirm an arbitration award.  In opposition to confirmation, KBR asserted

a public policy defense based on ***allegations*** that the contract at issue was procured by fraud.  Whether KBR has any liability under the False Claims Act and/or the Anti-Kickback Act is not an issue before this Court, and this Court makes no findings and expresses no opinion whatsoever on that issue.  The issue before this Court is whether KBR satisfied its burden to establish a narrowly construed public policy defense to confirmation of the Arbitration Award.  The Court considered KBR's argument that the allegations by the United States in the Court of Claims established the public policy defense.  Because the United States' counterclaim on which KBR relied included allegations that KBR managerial employees participated in the alleged kickback scheme, the Court concluded that KBR had not satisfied its burden to prove entitlement to a public policy defense to enforcement of an otherwise valid arbitration award.  KBR's arguments regarding vicarious liability and unclean hands misconstrue the Court's prior ruling and are not a basis for the Court to alter or amend that ruling.

### D.      Knowledge of Alleged Fraud Prior to Arbitration Proceeding

KBR argues that the Court improperly assumed that KBR knew of the fraud allegations prior to the arbitration proceeding.  In its opposition to the Petition, KBR asserted that its top executives did not know of the fraud allegations until the Court of Claims proceeding and, therefore, could not have raised the issue in the arbitration proceeding filed in January 2009.  In the prior ruling, the Court noted that KBR's sole basis for its public policy defense was the allegations in the United States' counterclaim in the Court of Claims proceeding.  The United States alleged in its counterclaim that KBR's upper management, including KBR's head of procurement, were advised in early 2004 of the "irregularities" in the contract process, years before the arbitration proceeding was filed in January 2009.  The Court did not and does not now find that KBR knew of the fraud allegations before the arbitration proceeding, a matter not material to the Court's ruling.  Instead, the Court considered the allegations in the United States' counterclaim, the sole support offered by KBR for its public policy defense, as part of the record in this case.  The argument regarding the timing of KBR's knowledge of the fraud allegations does not provide a basis for Rule 59(e) relief.

### E.    Comity

KBR argues that this Court's ruling "fails to comport with the doctrine of comity among federal courts" because it interferes with the Court of Claims proceeding. KBR's argument regarding comity is unpersuasive. Comity requires that federal courts exercise care to avoid interfering with proceedings in other federal courts. *See Save Power v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The Court of Claims proceeding is between the United States – not a party to this proceeding – and KBR. Tamimi is not a party to the Court of Claims proceeding. This Court emphasizes again that it has previously made and now makes *no* findings and *no* assumptions regarding the truth of the allegations in the United States' counterclaims. As a result, this Court's ruling that KBR failed to satisfy its burden to establish a narrowly construed public policy defense to confirmation of a valid arbitration award has no impact on the Court of Claims proceeding and does not violate any principles of comity among the federal courts.

## IV.    CONCLUSION AND ORDER

The Court did not assume that the United States could prove the allegations in the Court of Claims proceeding. To the extent KBR now takes the official position that the United States' allegations are false, and is proven correct, there is no factual basis for a public policy defense that the KBR-Tamimi contract was procured through

fraud.  To the extent KBR previously relied on the existence of the United States'

allegations in the Court of Claims as the basis for KBR's public policy defense, the

allegations do not support a denial of confirmation of the Arbitration Award on public

policy grounds, a difficult standard to meet generally and a standard KBR has not met

here.  This Court's ruling does not affect in any way the Court of Claims proceeding

between the United States and KBR.

The Court's ruling was and remains only that KBR failed to satisfy its burden

to prove that confirmation of the Arbitration Award in this case would violate public

policy.   Consequently, KBR has failed to provide a basis for this Court to alter its

prior ruling, and it is hereby

**ORDERED** that the Motion to Alter or Amend Findings and Judgment [Doc.

# 34] is **DENIED**.

SIGNED at Houston, Texas, this **12**[th] day of **May, 2011**.

Nancy F. Atlas
United States District Judge